# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ELLEN DOSDALL, CONNIE FOURNIER, GARY BERGER, and BRIAN OLSON, | Civil No. 05-498 (JRT/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CITY OF MINNEAPOLIS, ROCCO FORTÉ, CLARA SCHMITT-GONZALEZ, | |
| Defendants. | |

R. Daniel Rasmus, **CHRISTENSEN LAUE & RASMUS PA**, 5101 Vernon Avenue South, Suite 400, Minneapolis, MN 55436; Bradley J. Thorson, **PATTERSON THUENTE SKAAR & CHRISTENSEN, PA**, 80 South Eighth Street, Suite 4800, Minneapolis, MN 55402-2100; for plaintiffs.

James Anthony Moore and Sydnee N. Woods, **MINNEAPOLIS CITY ATTORNEY'S OFFICE**, 333 South Seventh Street, Suite 300, Minneapolis, MN 55402-2453, for defendants.

Plaintiffs Ellen Dosdall, Connie Fournier, Gary Berger, and Brian Olson previously held civil service positions with defendant City of Minneapolis. Plaintiffs have filed this lawsuit asserting that elimination of their civil service positions violated their federal constitutional rights. Plaintiffs also assert several state law claims. This matter is now before the Court on the parties' cross motions for summary judgment.[1] For

---

[1] On March 17, 2006, defendants moved for "an Order for Summary Judgment and dismissal of all counts against Defendants." (Docket No. 32.) In their memorandum in support of their motion, however, they fail to address plaintiffs' claims of violation of the Minneapolis

(Footnote continued on next page.)

the reasons discussed below, defendants' motion is granted as to plaintiffs' federal substantive due process and equal protection (Counts IV – V) claims; claims under the Minnesota state constitution (Counts VI – VII); emotional distress claim (Count XII); claims of breach of contract, breach of covenant of good faith and fair dealing, and promissory estoppel (Counts X – XI); and request for attorneys' fees (Count VIII). Defendants Forté and Schmitt-Gonzalez's motion is additionally granted as to plaintiffs' procedural due process claim (Count III). Defendants' motion is denied in all other respects. Plaintiffs' motion is denied.

## BACKGROUND

Plaintiffs Ellen Dosdall, Connie Fournier, Gary Berger, and Brian Olson worked in defendant City of Minneapolis's Department of Regulatory Services. This department is responsible for building permits, zoning, licensing, and inspections. Defendant Rocco Forté was appointed Director of Regulatory Service in July 2004 and was directed to institute structural change in the department. He was given broad latitude to make the department more efficient. Defendant Clara Schmitt-Gonzalez supervised Berger.

Forté decided to split the department into two subdivisions. One of the subdivisions became responsible for the "structural" portions of the department's business, such as building permits. The other subdivision became responsible for regulating behavior that occurred in the buildings, such as environmental regulation.

---

(Footnote continued.)

city charter (Count I), violation of 2003 Minnesota Session Law, Chapter 115 (Count II), wrongful discharge (Count IX), and gender discrimination (Count XIII). The Court, therefore, treats defendants' motion as one seeking partial summary judgment. *See Lindgren v. Camphill Village Minnesota, Inc.*, 2002 WL 1332796 (D. Minn. June 13, 2002).

Previously, the six managers all reported to one top manager, and Forté asserted that by dividing the department into two subdivisions, one person would not be overloaded with all the decision-making. Forté did not substantially alter the basic job duties for the managers within the six divisions within Regulatory Services, but the positions were changed to unclassified service and therefore no longer subject to civil service protections.

Dosdall and Fournier held the Deputy Director of Inspections (Development Review Services) and Deputy Director of Construction Inspection Services positions, respectively. According to plaintiffs, Forté concluded that Dosdall and Fournier would not be loyal to him and would be unacceptable as managers in his department. Forté took no formal action to discipline Dosdall and Fournier, but he eliminated their positions. He created new unclassified appointed positions with similar duties, and did not place Dosdall and Fournier in those positions.

Before the reclassification, Berger held the Manager Administration (Inspections) position. Forté did not have a direct supervisory relationship with Berger, who was supervised by Schmitt-Gonzalez. Schmitt-Gonzalez gave Berger a negative performance review, but held no formal disciplinary proceeding before his termination. Plaintiffs assert that all of the duties that Berger performed were divided up and given to other City employees. As for Brian Olson, he held the Manager Administration (Environmental) position. His civil service position was eliminated, but Olson testifies that he is still responsible for many of these duties in his new position with the City.

Upon elimination of plaintiffs' positions, plaintiffs were placed in the City's job bank. All but Berger continue to work for the City, but these employees now work at lower salary and with fewer benefits.

## ANALYSIS

### I.  STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.  PROCEDURAL DUE PROCESS (Count III)

Plaintiffs and defendants both seek summary judgment on plaintiffs' procedural due process claim. The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . ." U.S. Const. amend. XIV, § 1. To prevail on a property interest due process claim, a plaintiff must establish that (1) the plaintiff had a protected property interest in employment, and (2) defendants deprived plaintiff of this right without due process of

law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). The parties agree that plaintiffs were not given any process before defendants eliminated their civil service positions, but dispute whether plaintiffs have a protected property interest in employment.

The first question, however, is whether defendants eliminated plaintiffs' civil service positions pursuant to an "official policy." *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690-91 (1978). Local government units may be sued directly for unconstitutional actions pursuant to 42 U.S.C. § 1983, but only if the unconstitutional actions were pursuant to an official policy of the municipality. *Id.*; *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). The evidence shows that Forté was fully vested with hiring and firing authority for the City. Moreover, the final version of Forté's reorganization was formally approved by the Ways and Means committee and adopted by the full City Council. As such, the Court concludes that the action was taken pursuant to an "official policy."

The next question is whether plaintiffs have a protected property interest in employment. If a city statute or ordinance establishes that a public employee may not be terminated except for good cause, that employee has a property interest in his or her job and must receive due process protection before termination. *Loudermill*, 470 U.S. 532, 538-39. Chapter 19 of the Minnesota City Charter provides, "[N]o officer or employee, after six months' continuous employment shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard." Minneapolis, Minn., City Charter ch. 19, § 11. There is no dispute that all four plaintiffs were non-

probationary public employees who had more than six months continuous employment with the City.

Defendants argue that Chapter 115 of the 2003 Minnesota Session Laws specifically negates the civil service protections derived from Chapter 19 of the Minneapolis City Charter. Chapter 115 provides, "Notwithstanding a provision of the Minneapolis city charter, civil service rule, or a general or special law or rule to the contrary, the Minneapolis city council may by ordinance establish positions in the unclassified service of the city of Minneapolis . . . ." Act effective May 25, 2003, ch. 115. Defendants argue that because the city council acted under the authority of Chapter 115 to establish unclassified positions that matched the classified positions held by plaintiffs, plaintiffs could have no continuing expectation of civil service protection for their positions. The Court declines to adopt the interpretation of Chapter 115 urged by defendants. Chapter 115 does not speak to the reclassification or elimination of jobs. Chapter 115 merely provides authority to create appointed positions, notwithstanding Chapter 19 of the Minneapolis City Charter, which limits the creation of unclassified positions.

Defendants further argue that plaintiffs lack a constitutionally protected property interest in their jobs because plaintiffs were not terminated from their civil service positions. Rather, defendants assert that their civil service positions were eliminated due to a legitimate reorganization of the department. *Loudermill* does not apply when a job is eliminated due to "legitimate governmental reorganization." *See Christian v. Cecil County*, 817 F. Supp. 1279, 1284 (D. Md. 1993). Plaintiffs argue that defendants have not shown a "legitimate governmental reorganization." The reorganization exception has

been extensively developed in cases under the Veterans Preference Act.  Under this line of cases, a public employer may legally abolish a position and remove a veteran if the actions were taken in good faith and were "not a mere subterfuge to oust him from his position."  *See Minnesota ex. Rel. Boyd v. Mattson*, 193 N.W. 30, 32 (Minn. 1923).

Plaintiffs argue that the evidence shows that plaintiffs' positions were eliminated in bad faith.  The City's Classifications Manager testified that the duties of the old and new positions of Dosdall and Fournier are identical, and plaintiffs argue that this is evidence that the reorganization was a "mere subterfuge" to remove plaintiffs from these positions.  *See Young v. Duluth*, 386 N.W.2d 732, 738 (Minn. 1986) (explaining that courts most often hold that elimination of a position was a "sham" when there was "prompt re-creation of the office or position under a different name").  Plaintiffs support their argument with a report from the City Attorney that states that the lay-offs of Dosdall and Fournier would be illegal if the persons were veterans.[2]  As to the positions of Berger and Olson, plaintiffs assert that defendants' actions were in bad faith because defendants did not abolish their positions, but rather assigned their job duties to other persons.  *See Young*, 386 N.W.2d at 738 ("If the city merely reassigned Young's duties to nonveteran employees less senior than he, his position was not abolished in good faith . . . .").

---

[2] City Council approval is needed before an appointed position can be created, and the Director of Human Resources for the City requested an opinion from the City Attorney's Office about the propriety of reclassifying the Deputy Director positions into appointed positions and not placing Dosdall and Fournier in those positions.  The City Attorney concluded that if the persons in the position were veterans, the removal of the employees by eliminating the positions would be in "bad faith" and illegal under the Minnesota Veterans Preference Act.  Because Dosdall and Fournier are not veterans, however, the City Attorney concluded that defendants did not need to place them in the new appointed positions.

Defendants respond that the layoffs were a good faith effort to restructure the department to be more cost efficient. Defendants point to evidence that the City had to adjust to a cut in local government aid funds. The Mayor of the City of Minneapolis testified that he "gave Rocco Forté a broad mandate to do more with less and make it easier to do business with the City." (R.T. Rybak Dep. at 34.)

Given the conflicting evidence presented, the Court concludes that a genuine issue of material fact exists as to whether defendants eliminated each of the plaintiffs' positions pursuant to a legitimate governmental reorganization. As such, the Court denies the cross motions for summary judgment on plaintiffs' procedural due process claim.[3]

## III.   SUBSTANTIVE DUE PROCESS (Count IV)

Plaintiffs allege that defendants violated their substantive due process rights by eliminating the positions of plaintiffs "because of personal animus." (Am. Compl. ¶ 151.) To determine whether an individual's substantive due process rights have been violated the court examines "whether the officials acted in an arbitrary or capricious manner, or so as to shock the conscience." *Herts v. Smith*, 345 F.3d 581, 587 (8th Cir. 2003). Arbitrary and capricious decisions to discharge a public employee are those based upon reasons that are trivial or "wholly unsupported by a basis in fact." *Id*. To meet the conscience shocking standard, the government action must be "sufficiently outrageous" or "truly irrational." *Young v. City of St. Charles*, 244 F.3d 623, 628 (8th Cir. 2001).

---

[3] Under 42 U.S.C. § 1988(b), a prevailing party in a § 1983 action is entitled to reasonable attorney's fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Because the Court denies plaintiffs' motion for summary judgment, plaintiffs are not entitled to an award of attorneys' fees at this time.

The parties do not distinguish between plaintiffs' substantive and due process claims in their briefing, but the Court nevertheless concludes that defendants' motion for summary judgment on the substantive due process claim should be granted. The record does not indicate that the elimination of plaintiffs' positions was based on trivial or wholly unsupported reasons. Nor were the actions by defendants sufficiently outrageous to support a substantive due process claim. Indeed, defendants have produced evidence that there was a need in the department to increase productivity and cost effectiveness, and that the changes made by Forté were intended to meet these goals. Plaintiffs must meet a higher standard for this claim than the claim in Count III. Defendants' evidence is sufficient to rebut the substantive due process claim and, as a result, the claim fails.

**IV.   EQUAL PROTECTION (Count V)**

Defendants argue that they are entitled to summary judgment on plaintiffs' equal protection claim. The Equal Protection clause provides that no state shall "deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. Courts should deem state actions to be invalid if the action is not rationally related to a legitimate state interest. *City of Cleburne v. Clerburne Living Center*, 473 U.S. 432, 440 (1985).

Dosdall and Fournier were the only Deputy Directors who had their positions converted from classified civil service to unclassified appointed, and who were not appointed to those positions. Plaintiffs argue that Dosdall and Fournier are similarly situated to the other Deputy Directors, who were appointed to the new positions. Plaintiffs further argue that defendants have offered no legitimate reason why Dosdall

and Fournier were not qualified to fill the positions once the positions were converted. Plaintiffs similarly argue that defendants' actions in regards to Berger and Olson were "motivated by irrational prejudice." (Pls.' Mem. Opp. Defs.' Mot. For Summ. J. at 27.)

The Court cannot conclude that defendants' actions were not rationally related to a legitimate state interest. Again, defendants have produced some evidence that there was a need in the department to increase productivity and cost effectiveness, and that the changes made by Forté were intended to accomplish that goal. Accordingly, plaintiffs cannot meet the high burden of showing no rational relationship to a legitimate state interest, and the Court grants summary judgment to defendants on plaintiffs' equal protection claim.

## V.    DEFENSE OF QUALIFIED IMMUNITY

Defendants argue that the individual defendants Forté and Schmit-Gonzalez are entitled to qualified immunity. The doctrine of federal qualified immunity applies to shield municipal officials from personal liability for federal claims "unless the officials' conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Cornell v. Woods*, 69 F.3d 1383, 1390 (8th Cir. 1995). As explained above, the Court determines that there is a fact question as to the claim in Count III as to whether plaintiffs' positions were eliminated pursuant to a legitimate reorganization. Given this uncertainty, the Court cannot conclude that the conduct of Forté and Schmitt-Gonzalez violated clearly established constitutional rights of plaintiffs. The motion for summary judgment filed by defendants Forté and Schmitt-

Gonzalez is thus granted with respect to the only federal claim remaining in this case, which is the procedural due process claim (Count III).

## VI.     CLAIMS UNDER THE MINNESOTA CONSTITUTION (Counts VI – VII)

Defendants argue for judgment on plaintiffs' claims arising under the Minnesota Constitution on the theory that, unlike 42 U.S.C. § 1983, Minnesota has no statutory scheme providing for private actions based upon violations of the Minnesota Constitution. Courts have repeatedly stated that Minnesota has not recognized private remedies for violations of the Minnesota Constitution. *See, e.g.*, *Fearing v. St. Paul Police Dept.*, 2005 WL 914733, *5 (D. Minn. April 20, 2005) (citing cases). Plaintiffs provide no authority to contradict these clear holdings. The Court grants defendants' motion for summary judgment on these claims.

## VII.    REMAINING STATE LAW CLAIMS

### A.     Intentional Infliction Of Emotional Distress (Count XII)

Defendants move for summary judgment on plaintiffs' claim of intentional infliction of emotional distress. A plaintiff asserting a claim for intentional infliction of emotional distress must establish the following four elements: 1) the conduct must be extreme and outrageous; 2) the conduct must be intentional or reckless; 3) it must cause emotional distress; and 4) the distress must be severe. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). To be considered "extreme and outrageous," the conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652 n.3 (Minn. 1979).

Plaintiffs argue that elimination of Dosdall's position caused extreme disgrace and shame for Dosdall, and that Forté "demeaned Dosdall and others in public and eliminated her position without any due process." (Pls.' Mem. In Opp. To Defs.' Mot. For Summ. J. at 35.) Plaintiff further argues that Berger was subjected to harassing behavior by his supervisor, Schmit-Gonzalez, when she "concocted a bizarre and disparaging performance review that had no basis in reality." (*Id.*)

Even viewing the facts in the light most favorable to plaintiffs, the Court cannot conclude that defendants' conduct was so extreme as to go beyond all possible bounds of decency. *See*, *e.g.*, *Keathley v. Ameritech Corp.*, 187 F.3d 915, 925 (8th Cir. 1999) (holding that defendant's creation of a contrived file to justify dismissal of plaintiff falls short of extreme and outrageous conduct). The Court grants defendants' motion for summary judgment on plaintiffs' claim of intentional infliction of emotional distress.

### B.     Breach Of Contract, Breach Of Covenant Of Good Faith And Fair Dealing, And Promissory Estoppel (Counts X – XI)

Plaintiffs assert claims of breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel. Specifically, plaintiffs assert that defendants breached their contractual obligations to plaintiffs when they terminated plaintiffs without cause or notice and opportunity to be heard. Plaintiffs assert in the alternative that if there is no contract, then defendants represented to plaintiffs that they could remain in their civil service positions as long as they reasonably and adequately performed the duties assigned to them, and plaintiffs relied on these representations to their detriment.

The parties only cursorily discuss plaintiffs' contract and equitable claims. Defendants argue that plaintiffs "had no legitimate expectation in lifetime protections of civil service in light of the nature of their positions and 2003 Minnesota Session Laws, Chapter 115." (Defs.' Mem. In Supp. of Mot. for Summ. J. at 15.)  As discussed above, the Court rejects defendants' argument regarding Chapter 115, but plaintiffs do not substantively respond to defendants' argument that "the nature of their positions" prevents plaintiffs from prevailing on these claims.  Rather, plaintiffs fault defendants for failing to cite facts in the record supporting their argument for summary judgment. Defendants, as the moving party, do not have the burden to produce evidence showing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  Rather, it is the nonmoving party that must designate specific facts showing that there is a genuine issue for trial.  *Hernandez v. Jarman*, 340 F.3d 617, 622 (8th Cir. 2003); Fed. R. Civ. P. 56(e).  Plaintiffs cite to no facts in the record.  They do not even point the Court to the contract that defendants allegedly breached.  *See Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) ("[A] district court is not 'obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'").  Plaintiffs have failed to meet their burden to oppose summary judgment, and the Court therefore grants defendants' motion for summary judgment on these claims.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for partial summary judgment [Docket No. 32] is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted for all defendants on Counts IV - VIII and X - XII. On Count III, the motion is denied for defendant City of Minneapolis, but granted for defendants Forté and Schmitt-Gonzalez.[4]

2. Plaintiffs' motion for summary judgment [Docket No. 34] is **DENIED**.

DATED:   January 3, 2007                        s/ John R. Tunheim
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                United States District Judge

---

[4] Accordingly, this case will proceed to trial only on the following claims: violation of the Minneapolis city charter (Count I), violation of 2003 Minnesota Session Law, Chapter 115 (Count II), procedural due process – against the City of Minneapolis (Count III), wrongful discharge (Count IX), and gender discrimination (Count XIII).